IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LIKO AB, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO.  07-5302 |
| | : | |
| v. | : | |
| | : | |
| RISE LIFTS, INC., et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM AND ORDER

AND NOW, this 31st day of July, 2008, in accordance with the rulings made during the

record hearing held on May 28, 2008, it is hereby ORDERED that Plaintiff's Motion to

Disqualify Defendants' Counsel (Docket No. 31) is DENIED and that Defendants' Motion to

Dismiss Plaintiff's Complaint (Docket No. 23) is DENIED.  Further, it is hereby ORDERED that

Plaintiff shall file a Second Amended Complaint within 20 days of the date of this order, as

discussed below.  The court provided reasoning for its rulings on the record, and elaborates

below.

## I.    INTRODUCTION

Liko AB ("Plaintiff") brings this action against Rise Lifts, Inc., Romedic, Inc. and

individual John R. Armstrong, d/b/a Rise Healthcare and Romedic (collectively, "Defendants").

Plaintiff manufactures, markets and sells patient lifts, transfer devices and slings for use in

hospitals, healthcare facilities and private homes.  Defendants also manufacture, market, sell and

distribute patient lifts and slings for use in hospitals, health care facilities and private homes.  In

its First Amended Complaint, Plaintiff alleges four causes of action: federal trademark

infringement, trade dress infringement, false designation of origin under 15 U.S.C. § 1125(a), and unfair competition.

Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that all claims should be dismissed for failure to state a claim upon which relief can be granted.  Defendants argue that at a minimum, all claims against Defendant Armstrong should be dismissed, as the First Amended Complaint contains no allegations identifying Armstrong's personal role in any allegedly improper conduct.

Also pending before the court is Plaintiff's Motion to Disqualify Defendants' counsel (Docket No. 31).  Plaintiff argues that Hogan & Hartson, the firm representing Defendants in the present matter, previously represented Plaintiff in other matters, and, as a result, should be disqualified from any further representation in the matter presently before the court.

The court held oral arguments on these motions on May 28, 2008.

## II.   PLAINTIFF'S MOTION TO DISQUALIFY DEFENSE COUNSEL

### A.   Standard for disqualification

"The party seeking to disqualify opposing counsel bears the burden of clearly showing that continued representation would be impermissible." Cohen v. Oasin, 844 F. Supp. 1065, 1067 (E.D. Pa. 1994) (citing Commercial Credit Business Loans, Inc. v. Martin, 590 F. Supp. 328, 335-36 (E.D. Pa. 1984)).  Plaintiff seeks disqualification of Hogan & Hartson pursuant to Pennsylvania Rule of Professional Conduct 1.9(a), as adopted by the District Court of the Eastern District of Pennsylvania.[1]  Rule 1.9(a)  states: "A lawyer who has formerly represented a client in

---

[1] United States District Court for the Eastern District of Pennsylvania Local Rule 83.6.IV(B).

a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent." Thus, disqualification of counsel under Rule 1.9(a) is only appropriate if (1) the former client has not consented; (2) the interests of counsel's current client are materially adverse to the interests of its former client; and (3) the former representation is the same or a substantially related matter. Foley v. International Broth. of Electrical Workers Local Union, No. Civ.A. 98-906, 1998 WL 720153 (E.D. Pa. Sept. 10, 1998).

It is undisputed that Hogan & Hartson formerly represented Plaintiff. Plaintiff has not consented to Hogan & Hartson's representation of Defendants, and Defendants' interests are materially adverse to those of Plaintiff. Thus, the issue before the court is whether Hogan & Hartson's former representation of Plaintiff was in a matter that is the same or a substantially related matter to the present matter.

To find that there is such a substantial relationship, "[t]here is no requirement that the former and present suits involve similar causes of action; the two cases may be entirely dissimilar." Realco Services, Inc. v. Holt, 479 F. Supp. 867, 871 (E.D. Pa. 1979). Further, the court does not actually inquire "whether counsel has actually obtained confidential information through its prior representation." Reading Anthracite Co. v. Lehigh Coal & Navigation Co., 771 F. Supp. 113, 115 (E.D. Pa. 1991). The critical question is whether "the client in the prior representation might have imparted confidential information to his lawyer to aid the lawyer in dealing with particular issues." Realco Services, Inc., 479 F. Supp. at 871 (emphasis added). If so, and "if issues arise in the second suit which would permit the use of such confidences against the original client, the substantial relationship test is met, and disqualification is required." Id.

The attorney "might have acquired" the information at issue "if (a) the lawyer and the client

ought to have talked about particular facts during the course of the representation, or (b) the

information is of such a character that it would not have been unusual for it to have been

discussed between lawyer and client during their relationship." Id. at 872.

      B.    Hogan & Hartson's previous representation of Plaintiff

     The majority of Hogan & Hartson's work for Plaintiff occurred in 1997.[2]  In 1997 and

1998, Hogan & Hartson represented Plaintiff in a matter involving a 510(k) submission with the

Food & Drug Administration (FDA).  According to the FDA website, a "510(k) is a premarket

submission made to FDA to demonstrate that the device to be marketed is at least as safe and

effective, that is, substantially equivalent, to a legally marketed device (21 CFR 807.92(a)(3))

that is not subject to [Premarket Approval]."  U.S. Food and Drug Administration,

http://www.fda.gov/cdrh/devadvice/314.html (last visited July 24, 2008).  Although the 510(k)

work involved several of Plaintiff's mobile patient lift product lines, the Viking product line was

not at issue.  (Peter C. Schechter Decl. ¶ 12.)

     In 2000, Hogan & Hartson advised Plaintiff on an issue concerning a Medical Device

Report (MDR).  (Albert W. Turnbull Decl. ¶ 16.)  "An MDR is a report that must be filed with

the FDA after certain adverse events involving a marketed medical device."[3]  (Id. ¶ 16.)  Plaintiff

submits that the work Hogan & Hartson provided at this time concerned Plaintiff's "proposals to

---

[2] Hogan & Hartson have provided time records for its work for Plaintiff.  (Turnbull Decl. ¶ 11.)  Between 1997 and 2006, Hogan & Hartson provided a total of 47.24 hours of work to Plaintiff, 34 hours of which were performed in 1997.  (Id.)

[3] The governing regulations concerning MDRs can be found at 21 C.F.R. pt. 803.

possibly make design changes to its mobile patient lifts" and the impact of these proposed changes on the FDA status of Plaintiff's mobile patient lifts.  (Schechter Decl. ¶ 13.)  Again there is no evidence that the lifts discussed included the Viking product line.  No additional information has been provided to the court regarding the nature or scope of Hogan & Hartson's work for Plaintiff.

Hogan & Hartson also performed work for Plaintiff in 2003.  This work was done in the context of the so-called "Missouri Litigation," in which Plaintiff was the defendant.  The Missouri Litigation involved an unfair competition claim in which several of Plaintiff's mobile patient lifts, not including the Viking product line, were at issue.  In this litigation, Plaintiff was represented by counsel other than Hogan & Hartson, but in 2003, that counsel asked Hogan & Hartson to review at least one affidavit and to assist with the preparation of a Trade Complaint. (Schechter Decl. ¶ 14.)  "As a general matter, a trade complaint involves one business alleging to the FDA that a competitor's products, labeling or marketing activities do not comply with the applicable FDA requirements."[4]  (Turnbull Decl. ¶ 17.)  Hogan & Hartson did three and one half hours of work for Plaintiff in 2003.  (Id. ¶ 17.)

Next, in 2006, Hogan & Hartson did two and one quarter hours of work for Plaintiff regarding a regulatory issue that was related to a then-pending criminal matter.  (Id. ¶ 19.)  There is no other evidence about this work.

_____

[4] Defendants submit that "[t]rade complaints typically fall into one of two categories.  The first kind of complaint alleges that the competitor is selling a product without any clearance from the FDA.  The second kind of trade complaint alleges that the competitor has made changes to its product or its claims about the product without a proper clearance from the FDA."  (Turnbull Decl. ¶ 17.)

C.     The nature of the present action is not the same or substantially related to the matters in which Hogan & Hartson provided counsel to Plaintiff.

Plaintiff argues that the matters in which Hogan & Hartson previously did work for Plaintiff are substantially related to the present matter and require the disqualification of Hogan & Hartson from any further representation of Defendants in the present matter.  Based upon review of the record, the court finds that the present matter is not substantially related to any matter in which Hogan & Hartson previously worked on Plaintiff's behalf and that disqualification is not required.

The court will first address the FDA work performed in 1997 and 1998.  Plaintiff argues that it is likely, if not certain, that in the course of this FDA work, Hogan & Hartson would have inquired into the functionality of different components of Plaintiff's patient lifts.  Although Plaintiff recognizes that the FDA work concerned patient lifts other than those in the Viking product line, Plaintiff contends that the Viking product line adopts and incorporates design elements and trade dress from Plaintiff's other product lines.[5]  It follows, Plaintiff argues, that Hogan & Hartson might have obtained confidential information about the functionality of components of these other product lines in the course of the FDA representation and that such information is related, and even essential, to Plaintiff's claim of a trade dress violation in the present matter.

The evidence submitted is that Hogan & Hartson's FDA 510(k) work focused on establishing the safety of Plaintiff's patient lifts.  Any inquiry made into the design of any of Plaintiff's mobile patient lifts would have been limited to issues concerning safety.  Further, the

---

[5] Plaintiff fails to specify what design elements and trade dress are common to the Viking product line and Plaintiff's other products lines.

FDA work appears to have occurred substantially before the Viking patient lift came into existence, which makes it even more unlikely that Plaintiff might have imparted confidential information about its Viking lifts to Hogan & Hartson.  Given the scope and nature of the representation, the court finds that there is no evidence from which it could conclude that Plaintiff "might have" imparted confidential information to Hogan & Hartson in conjunction with the 510(k) issue that will arise as an issue in the present matter.  The court finds that the 510(k) work done in 1997 and 1998 is not the same or substantially related to the present matter, and that disqualification would not serve the purpose of Rule 1.9(a).

Second, the court will address the work done by Hogan & Hartson for Plaintiff  in 2000, 2003 and 2006.  Plaintiff has produced no evidence that it might have provided confidential information to Hogan & Hartson during the course of that representation regarding an issue that will likely arise in the present matter.  The evidence is that the work done by Hogan & Hartson during these years was extremely limited in both scope and amount.  The court concludes that the former representation in these years is not the same or substantially related to the current representation, and that disqualification is not required.

The court has been advised that no Hogan & Hartson attorney who previously worked on any matter relating to Plaintiff is involved in the current litigation, and that, in fact, several of the attorneys who worked on the former matters have since left Hogan & Hartson.  (Turnbull Decl. ¶¶ 11, 13; Decl. Jon M. Talotta ¶¶ 3, 6.)

Having concluded that the matters in which Hogan & Hartson previously provided representation to Plaintiff are not the same or substantially related to the current representation, and Plaintiff having failed to meet its burden, the court finds that Plaintiff has failed to meet its

burden.  Plaintiff's Motion to Disqualify is denied.  The court further orders that all Hogan &

Hartson attorneys having personal knowledge concerning the substance of the matters for which

Hogan & Hartson provided counsel to Plaintiff are to be screened from any involvement in this

litigation.


## II.   DEFENDANTS' MOTION TO DISMISS

Also before the court is Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P.

12(b)(6).  During Defendants' oral arguments in support of their motion, they argued that at a

minimum, Plaintiff must file an Amended Complaint clarifying its claims.  The court denied the

motion to dismiss, but ruled that Plaintiff was required to submit an Amended Complaint.


A.     Standard of Review

When deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "'accept all

factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

to relief.'" Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v.

Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (stating that this statement of the

Rule 12(b)(6) standard remains acceptable following the U.S. Supreme Court's decision in Bell

Atlantic Co. v. Twombly, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007)).  To withstand a motion to

dismiss under Rule 12(b)(6), "'[f]actual allegations must be enough to raise a right to relief

above the speculative level.'" Id. at 232 (quoting Twombly, 127 S.Ct 12 1965).  Thus, "'stating .

. . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required

element." Id. at 234 (quoting Twombly, 127 S.Ct. At 1965); see also Wilkerson v. New Media

Tech. Charter Sch., Inc., 522 F.3d 315, 322 (following Phillips).  This standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."  Phillips, 515 F.3d at 234 (quoting Twombly, 127 S.Ct. at 1965) (quotations omitted).

When deciding a motion to dismiss under Rule 12(b)(6), a court may properly consider the factual allegations contained in the complaint, exhibits attached thereto, documents referenced therein, matters of public record, and undisputedly authentic documents attached as exhibits to the defendants' motion to dismiss if the plaintiff's claims are based on those documents.  Pension Benefit Guar. Corp. v. White Consol. Indus. Inc., 998 F.2d 1192, 1196 (3d Cir. 1993), cert. denied, 510 U.S. 1042 (1994).

B.      Count I: Trademark Infringement

In Count I, Plaintiff alleges that Defendants have infringed upon its trademark "REPO SHEET" by using this mark on Defendants' website to advertise Defendants' products.  Plaintiff alleges that Defendants' use of Plaintiff's mark is likely to cause confusion, cause mistake and deceive customers into believing that the products sold by Defendants originate from, or are sponsored by, Plaintiff.  (First Amend. Compl. ¶ 31.)

A claim of trademark infringement consists of three elements: (1) Plaintiff must be the legal owner of the mark, (2) Plaintiff's mark must be valid and legally entitled to protection, and (3) Defendants' use of the mark is likely to confuse consumers about the origin of the goods or services.  Freedom Card v. JPMorgan Chase & Co., 432 F.3d 463, 479 (3d Cir. 2005) (citing A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 166 F.3d 197, 202 (3d Cir. 1999)).  In the

First Amended Complaint, Plaintiff alleges that it is the legal owner of the REPO mark and that its mark is valid and legally entitled to protection.  In Paragraph 30 of the First Amended Complaint, Plaintiff further alleges that "Defendants have improperly and wrongfully used Liko's REPO SHEET mark on their website (www.riselifts.com) to advertise Defendants' non-Liko products in violation of 15 U.S.C. § 1114."  (First Amend. Compl. ¶ 30.)

Defendants argue that Plaintiff has not stated a claim of trademark registration infringement.  Defendants argue that is not sufficient for Plaintiff to allege only that the mark appeared on a website without providing any details about what products or services the mark is alleged to have identified.  Plaintiff contends that because the use of the mark occurs in close proximity to the words "repositioning sheet" on a web page that sells repositioning sheet products, they have met the pleading requirements for a claim of trademark infringement.

Although Plaintiff has pled that Defendants have used the mark to advertise Defendants' products and that such use of the mark is likely to confuse customers, Plaintiff must clarify what products Defendants are allegedly using the mark to advertise, and how the mark so advertises these products.  This additional specificity is necessary to meet the notice pleading standard set forth by Fed. R. Civ. P. 8(a).  The court denies Defendants' Motion to Dismiss Count I, and requires Plaintiff to submit a Second Amended Complaint that further clarifies Plaintiff's claim brought under Count I.  The court directs Plaintiff to pay particular attention to the allegations in Paragraph 30 of the First Amended Complaint.

C.      Count II: Trade Dress Infringement

In Count II, Plaintiff alleges that Defendants' products infringe upon the trade dress of

Plaintiff's Viking product line.  Plaintiff alleges that its Viking product line "contains non-functional designs and aesthetic features, including but not limited to the slingbar, the color size meter, and the overall shape and appearance of its portable patient lifts, which together are arbitrary embellishments that create an overall look to [Plaintiff's] products that is non-functional and unique to [Plaintiff], adopted for the purpose of identifying [Plaintiff] as the source of its goods that are sold in commerce."  (First Amend. Compl. ¶ 38.)  Plaintiff alleges that Defendants' product lines, including "EVA" and "RINO", use Plaintiff's trade dress, and that this use is likely to confuse customers as to the origin of Defendants' products.  (First Amend. Compl. ¶¶ 40-41.)  Plaintiff attaches photographs of what is represented to be Plaintiff's trade dress and Defendants' allegedly infringing products.  (First Amend. Compl. ¶¶ 38, 40, Exs. C-D.)

In its Motion to Dismiss, Defendants argues that Plaintiff has failed to allege sufficient facts to establish a legally cognizable trade dress claim.  Specifically, Defendants argue that the allegations set forth in Paragraph 38 are insufficient to put Defendants on notice as to what trade dress is at issue.  Paragraph 38 identifies the Viking non-functional designs and aesthetic features as "including but not limited to the slingbar, the color size meter, and the overall shape and appearance of its portable patient lifts."  (First Amend. Compl. ¶ 38.)  Defendants argue that the phrase "including but not limited to" necessarily implies that Plaintiff has not specified each of the components of the trade dress at issue.  In addition, Defendants contend that Plaintiff's failure to define "the slingbar" and "the color size meter" or specify what is meant by "the overall shape and appearance of its portable patient lifts" deprives Defendants of adequate notice of Plaintiff's claim.  Defendants argue that the attachment of photographs does not cure this lack of notice.  Defendants do not suggest that trade dress infringement must be pled with particularity pursuant

to Fed. R. Civ. P. 9(b); rather, they argue that Count II, as pled, does not meet the notice pleading standard set forth by Fed. R. Civ. P. 8(a).

A claim of trade dress infringement consists of three elements: "(1) the allegedly infringing design is non-functional; (2) the design is inherently distinctive or has acquired secondary meaning; and (3) consumers are likely to confuse the source of plaintiff's product with that of defendant's product." <u>McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC</u>, 511 F.3d 350, 357 (3d Cir. 2007).  Although the allegations of Count II address these three elements, Plaintiff's description of the trade dress at issue is, by the very words of the description itself, incomplete ("including but not limited to") and vague ("the overall shape and appearance of its portable patient lifts").  Further, there is no definition of the two design elements ("the slingbar" and "the color size meter") specified, nor are these features marked on any of the photographs submitted.  The mere attachment of photographs is not sufficient to provide notice of what elements are alleged to constitute the trade dress at issue.  During oral argument, Plaintiff acknowledged that "at some point" it would be obligated to provide additional specificity regarding the trade dress at issue.  The time for such specificity is now.

The court finds that Plaintiff has pled the elements of a claim of trade dress infringement and Defendants' Motion to Dismiss Count II is denied.  Plaintiff, however, is required to file a Second Amended Complaint that contains an amended cause of action under Count II that meets the notice pleading requirement.  Plaintiff is directed to plead with greater clarity the trade dress at issue, particularly the allegations of Paragraph 38 of the First Amended Complaint.

      D.    <u>Count III: False Designation</u>

In Count III, Plaintiff alleges that Defendants have used Plaintiff's REPO SHEET mark and trade dress "to falsely designate the origin of Defendants' goods, which has caused or is likely to cause confusion, mistake, or deception as to affiliation, connection, or association of [Plaintiff] with Defendants." (First Amend. Compl. ¶ 47.) Count III, as pled, relies on the facts alleged in Counts I and II. Defendants argue that Count III suffers from the same pleading defects as Counts I and II and that the matter should be dismissed for failure to state a claim of false designation of origin.

A claim of false designation has four elements: (1) the defendants used a false designation of origin; (2) the use occurred in interstate commerce; (3) that such false designation is likely to cause confusion, mistake or deception as to the origin, sponsorship, or approval of Defendants' goods or services by another person; and (4) that Plaintiff has been or is likely to be damaged. <u>See</u> <u>American Tel. and Tel. Co. v. Winback and Conserve Program, Inc.</u>, 42 F.3d 1421, 1428 (3d Cir. 1994); <u>see also</u> 15 U.S.C. § 1125(a). The court finds that Plaintiff has alleged facts addressing each of these elements and that Plaintiff has stated a claim of false designation of origin. Defendants' Motion to Dismiss Count III is denied. To the extent that the amendment of Counts I and II affects the claim pled in Count III, Plaintiff must also amend Count III in its Second Amended Complaint.

      E.    <u>Count IV: Common Law Unfair Competition</u>

In Count IV, Plaintiff alleges that Defendants' trademark infringement and trade dress infringement constitute common law unfair competition. Defendants argue that this count

suffers from similar pleading defects as Counts I, II, and III.

A claim for unfair competition under Pennsylvania common law is identical to a claim under the Lanham Act, except that it does not have an interstate commerce requirement.  Gideons Int'l, Inc. v. Gideon 300 Ministries, Inc., 94 F. Supp. 2d 566, 580-81 (E.D. Pa. 1999); see also Fisons Horticulture, Inc. v. Vigoro Indus., 30 F.3d 466, 472 (3d Cir. 1994).  Thus, in order to state a claim for common law unfair competition, a plaintiff must allege that 1) it has a valid and legally protectable mark; 2) it owns the mark; and 3) the defendants' use of the mark to identify its own goods or services causes a likelihood of confusion.  A&H Sportswear, Inc. v. Victoria's Secret Store, Inc., 237 F.3d 198, 210 (3d Cir. 2000).  The court finds that Plaintiff has alleged facts addressing each of these elements and has therefore stated a claim of false designation of origin.  To the extent the required amendment to clarify the causes of action set forth in Counts I, II and III affects the claim made under Count IV, Plaintiff must amend Count IV in its Second Amended Complaint.  Defendants' Motion to Dismiss Count IV is denied.

     F.    <u>Claims against defendant Armstrong will be withdrawn.</u>

Defendants argues that all claims against individual defendant Armstrong should be dismissed because no facts are alleged to support the imposition of personal liability on Armstrong, such as facts that would support the piercing of the corporate veil.  During the oral arguments, Plaintiff conceded that its claims are only against the corporate entities and that it has not alleged any basis for Armstrong's personal liability.  Consequently, Plaintiff is ordered to

withdraw all claims made against defendant Armstrong as an individual.  This withdrawal shall

be reflected in the Second Amended Complaint.

BY THE COURT:


    S/ James T. Giles
                     J.